IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-173-3 |
| NASSER McFALL | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, Robert E. Eckert, Assistant United States Attorney for the district for the district respectfully requests that this Court sentence the defendant Nasser McFall ("McFall") to a term of 84 months' imprisonment to be followed by three years of supervised release.

**I.  INTRODUCTION**

On April 2, 2022, the defendant was arrested based on an arrest warrant approved in the Eastern District of Pennsylvania charging him with violating Title 18, United States Code, § 844(n), conspiracy to maliciously damage property used in interstate commerce by means of an explosive. On April 22, 2021, a grand jury sitting in the Eastern District of Pennsylvania returned an Indictment charging Nasser McFall with one count of conspiracy to maliciously damage property used in interstate commerce by means of an explosive and four counts of maliciously damaging property used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(i). On January 20, 2022, a Superseding Indictment was returned that charged the defendant with the same counts as the original Indictment. On June 29, 2022, the defendant plead guilty to the Indictment in accordance with a plea agreement. The parties agreed that the plea agreement was made pursuant to Federal Rule of Criminal Procedure

1

11(c)(1)(C) and that the following specific sentence is an appropriate disposition of this case: 84 months of imprisonment; a 3-year period of supervised release; a fine, if any, to be determined by the Court; and a $500 special assessment.  Full restitution of $256,083 also shall be ordered. A sentencing hearing is currently scheduled for October 13, 2022, at 10:00 a.m., before the Honorable Gene E.K. Pratter.

II.    **SENTENCING PROCEDURE**

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006)).

For the reasons set forth below, the government requests that this Court impose a sentence of 84 months' imprisonment.

III.    **MAXIMUM AND MANDATORY MINIMUM PENALTIES**

On each count, the defendant faces a maximum sentence of 20 years' imprisonment, with a mandatory minimum five-years' imprisonment, a three-year period of supervised release, a

2

$250,000 fine, and a $100 special assessment, per count of conviction. The defendant faces a total maximum penalty of 100 years' imprisonment, a mandatory minimum of five years' imprisonment, a 3-year period of supervised release, a $1,250,000 fine, and an $500 special assessment. Full restitution of as much as $256,083 also shall be ordered.

### IV.     SENTENCING GUIDELINES CALCULATIONS

The government agrees with the sentencing guideline calculations of the Probation Department, as reflected in the Presentence Report (PSR). These calculations established that McFall has a Total Offense Level of 27, and a Criminal History Category of I, resulting in an advisory guideline range of 70 to 87 months' imprisonment. PSR ¶61, 64.

### V.     ANALYSIS OF THE 3553(a) FACTORS

The government seeks a sentence of 84 months' imprisonment. The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3

(5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

1.  Nature and Circumstances of the Offense

Between October 28, 2021, and December 2, 2020, defendant McFall, along with Cushmir McBride and Kamar Thompson, conspired and agreed to maliciously damage and destroy, and attempt to damage and destroy, by means of fire or an explosive, ATMs used in interstate commerce. Specifically, on multiple occasions, defendant McFall, in concert with, McBride and Thompson detonated explosive devices on ATMs located in Philadelphia and Delaware in order to access and steal the cash inside.

Defendant McFall, along with Cushmir McBride and Kamar Thompson drove in vehicles to locations with ATMs, for the purpose of detonating explosives to destroy the ATMs, and to steal the United States currency contained inside the ATMs. Defendant McFall, Cushmir McBride, and Kamar Thompson used tools, including but not limited to, hammers, axes, saws, crowbars, and other equipment, and wore construction clothing to facilitate and carry out their

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

plan to destroy ATMs with explosive devices and to steal the United States currency contained inside the ATMs. Defendant McFall, Kamar Thompson and Cushmir McBride entered or broke into businesses to gain access to ATMs inside, and used explosives to destroy the ATMs and to steal the United States currency contained inside the ATMs. Finally, defendant McFall, along with Kamar Thompson and Cushmir McBride, covered their faces with masks and wore other items of clothing to conceal their identities and to evade capture by law enforcement.

On October 28, 2020, defendant McFall, Cushmir McBride, and Kamar Thompson drove together in a vehicle to the Target located at 2701 Castor Avenue, Philadelphia, Pennsylvania (hereinafter referred to as "the Castor Avenue Target"). After arriving at the Castor Avenue Target, Kamar Thompson and Cushmir McBride, wearing masks to conceal their identities, entered the store carrying tools, and defendant McFall remained in the vehicle as the lookout and getaway driver. After entering the Castor Avenue Target, Cushmir McBride retrieved a safety jacket from the floor of the Target and put it on. Kamar Thompson and Cushmir McBride then used the tools to break open the ATM. Kamar Thompson placed an explosive device inside of the ATM and lit it. The explosive device detonated, damaging the ATM, and allowing Kamar Thompson and McBride to gain access to the United States currency inside. Kamar Thompson and Cushmir McBride stole approximately $39,628 from the ATM, left the store, and rejoined defendant McFall in the getaway vehicle. Kamar Thompson, Cushmir McBride, and defendant McFall then fled the area in their vehicle.

On October 29, 2020, defendant McFall, Cushmir McBride, and Kamar Thompson drove together in a vehicle to the Wawa located 3230 Richmond Street, Philadelphia, Pennsylvania (hereinafter referred to as "the Richmond Street Wawa"). After arriving at the Richmond Street

Wawa, Kamar Thompson and Cushmir McBride, wearing construction safety vests, and masks to conceal their identities, and carrying crowbars, unsuccessfully attempted to break into the Richmond Street Wawa through a side door. Thompson and McBride then forcibly entered the store through the front door, while defendant McFall remained in the vehicle as the lookout and getaway driver. While inside the Richmond Street Wawa, Kamar Thompson and Cushmir McBride used pry bars to open two PNC Bank ATMs. After breaking open the ATMs with the tools, Cushmir McBride placed an explosive device inside of the ATM and lit it. The explosive device detonated, damaging the ATM, and allowing Thompson and McBride to gain access to the United States currency inside. Thompson and McBride stole approximately $150,610 from the ATMs, placed the stolen money in a trash can from store, left store, and defendant McFall in the getaway vehicle. Defendant McFall, Cushmir McBride and Kamar Thompson fled the area in their vehicle and drove to a secure location near the Pennsylvania/Delaware border.

On or about November 5, 2020, Kamar Thompson and Cushmir McBride drove from Philadelphia to Claymont, Delaware, and met defendant McFall. Defendant McFall, Cushmir McBride and Kamar Thompson drove together to the Wawa, located at 601 Naamans Road, Claymont, Delaware (hereinafter referred to as "the Naamans Road Wawa") in Kamar Thompson's vehicle, which had its vehicle identification number covered and a stolen registration plate affixed to it, in order to conceal the identity of the true owner of the vehicle. Defendant McFall drove Thompson's vehicle to the Naamans Road Wawa. After arriving, defendant McFall, Cushmir McBride and Kamar Thompson parked the vehicle and remained for a brief time. Defendant McFall, McBride and Thompson then drove out of the parking lot and left the area. After leaving the Naamans Road Wawa, defendant McFall, McBride and

6

Thompson drove together in Thompson's vehicle to the Wawa at 301 Ridge Road, Claymont, Delaware (hereinafter referred to as "the Ridge Road Wawa"). After arriving at the Ridge Road Wawa, Thompson and McBride entered the store, which was open for business, while wearing construction safety vests, masks to conceal their identities, and armed with crowbars, as defendant McFall remained in the vehicle as the lookout and getaway driver. After entering the Ridge Road Wawa, Thompson locked the door behind them, preventing the employees inside from leaving and preventing anyone from entering the store. Thompson brandished the crowbar, corralled the store employees, forced them to sit on the floor, and demanded their cellular phones. McBride approached the ATM, placed an explosive device into an ATM, and lit it. The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside. Thompson and McBride then fled the store and rejoined defendant McFall in the getaway vehicle and fled the area.

On December 2, 2020, Kamar Thompson and Cushmir McBride, drove together in a vehicle to the Wells Fargo ATM, located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania. Defendant McFall drove in a separate vehicle to the Wells Fargo ATM, located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania. Thompson and McBride wore construction safety vests, and masks to conceal their identities. Thompson and Cushmir McBride left the vehicle, set up orange traffic cones in the parking lot, and approached the ATM where Thompson and Cushmir McBride placed an explosive device inside the ATM and lit it. The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside. Thompson and McBride then placed a second explosive device inside of the ATM and lit it. The explosive device detonated, causing further

7

damage to the ATM, and allowing Thompson and McBride to gain access to the United States currency inside. As Thompson and McBride were stealing money from the ATM, defendant McFall stayed in his vehicle, and acted as a lookout for any police or law enforcement activity. Thompson and Cushmir McBride stole approximately $65,845 from the ATM and fled the area in their vehicle. Thompson and Cushmir McBride met defendant McFall to distribute the proceeds from the robbery of the Wells Fargo ATM on December 2, 2020.

    2.    <u>History and Characteristics of the Defendant</u>

        A.    <u>Criminal History</u>

The defendant does not have any previous criminal convictions and is therefore in Criminal History Category I. PSR ¶ 64.

        B.    <u>Personal Background</u>

The defendant lived with his mother in Claymont, Delaware for approximately seven years prior to his arrest in this case. PSR ¶ 75. During the remaining portion of his childhood, the defendant resided in various locations with his parents in Delaware County. PSR ¶ 72. The defendant is single and does not have any children. PSR ¶ 79. Upon his release from prison, the defendant plans on residing with this mother. PSR ¶ 81. The Probation Office determined that the defendant will need substance abuse treatment to assist him in his reintegration into society. PSR ¶ 81.

    3.    <u>Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses</u>

McFall's actions in this case were gravely serious. During each explosive incident, McFall or his co-conspirators carried explosive devices to the location of each victim business and then decided to place a bomb into an ATM in the hopes that it would be sufficiently

damaged such that they could steal the money inside. Even when McFall and his co-conspirators encountered a business that was open and staffed by innocent employees, they did not hesitate to place a bomb inside of the ATM and detonate it, in an effort to access the cash inside. By sentencing the defendant to 84 months while the defendant is incarcerated, society will be protected, and he cannot harm any other person.

For the reasons set forth above, a sentence of 84 months' imprisonment is necessary in this case "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

    4.    Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

The recommended sentence affords adequate deterrence to others who would commit similar offenses, and protects the public from any further crimes of the defendant for at least as long as he is incarcerated. 18 U.S.C. § 3553(a)(2). The defendant's actions in this case where he conspired with others and then took actions that could have potentially seriously injured innocent people reveal that he is in great need of specific deterrence. This Court now has an opportunity to impose a sentence that will force the defendant to rehabilitate and be deterred from committing crime. The requested sentence of 84 months' incarceration is sufficient but not greater than necessary to meet that need.

    5.    Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner

McFall could benefit from educational or vocational programs, and it appears that he is interested in pursuing any such programs. PSR ¶ 99. The defendant reported working at a landscaping company in Pennsylvania for a few months but no other periods of employment.

PSR ¶ 100. It certainly seems that he could benefit from additional vocational training while incarcerated and/or while on supervised release. This would aid the defendant in reintegrating into society. The recommended sentence will not inhibit from pursuing these goals and needs, if desired, while in the custody of the Bureau of Prisons or following his eventual release.

      6.      Need to Avoid Unwarranted Sentence Disparities Among Defendants with <u>Similar Records who have been Found Guilty of Similar Conduct</u>

Sentencing consistency is extremely important in the overall administration of justice. Any sentence imposed on defendant McFall must reflect consideration of the sentences imposed upon similarly situated defendants. Here, McFall is the first defendant in this case to be sentenced however, as noted above, the recommended sentence is within the applicable guideline range. Sentence disparities among such individuals must be avoided.

## VI. CONCLUSION

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a sentence of 84 months' imprisonment and three years' of supervised release. McFall's actions in this case, that included joining a conspiracy, at its inception, to place bombs inside of ATMs throughout the Philadelphia area to steal money, even when innocent employees were present inside of the victim locations demonstrates that a significant sentence of incarceration is warranted. For the reasons set forth above, the government respectfully requests that this Court accept the recommendation of the parties and impose the agreed-upon sentence of 84 months incarceration, three years of supervised release, and a $500 special assessment.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney

_____
Robert E. Eckert
Assistant United States Attorney

Dated: October 6, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the government's sentencing memorandum has been served via electronic filing and electronic mail on this date on counsel for the defendant:

Heather Mattes, Esq.
hjm@hjmattes.com

Robert E. Eckert
Assistant United States Attorney

Date: October 6, 2022